UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| John P. Cooney, | |
| Plaintiff, | Case No. 13 C 8819 |
| v. | Judge John Robert Blakey |
| The Trustees of the Will County Carpenters, Local 174, Pension Fund, *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

This matter concerns the alleged conversion of pension contributions that had been paid to a multi-employer benefit plan on behalf of Plaintiff John Cooney. Plaintiff alleges state law claims for conversion and conspiracy. The plan at issue is called Trustees of Will County Carpenters, Local 174, Pension Fund (the "Fund"). The Fund is listed as a Defendant in this matter, along with its trustees, its lawyer Hugh Arnold, and his firm Arnold and Kadjan.[1] Plaintiff claims federal jurisdiction under the Employee Retirement Income Security Act ("ERISA") and the Labor Management Relations Act ("LMRA"). On April 21, 2014, the Fund filed a motion to dismiss [20]. Later that day, Defendants Hugh Arnold and the Arnold and Kadjan firm also filed a motion to dismiss [23]. As explained below, those motions are

---

[1] The trustees are Gary Perinar, Jr., Larry Perinar, Jr., Mel Gary, Jr., James Pasch, and Richart J. Berti. They were each sued in their capacity as trustee, and throughout this Opinion are referred to collectively as the "Trustees."

1

granted without prejudice. The status of the Trustees, who failed to file an answer or a responsive pleading, will be addressed at the end of this Opinion.

**I.      Background[2]**

From January 6, 2004 to October 31, 2008, Plaintiff worked for Avenue Inc., and Avenue Premier Carpentry and Siding Contractors, Inc. (collectively "Avenue"). [1] Complaint at ¶1. Avenue was a signatory employer with the Chicago Regional Council of Carpenters ("Regional Council") through a Collective Bargaining Agreement ("CBA") between the Regional Council and the Residential Construction Employers Council ("RCEC"). *Id.* at ¶8. Under the CBA, Avenue was obligated to make monthly payments for its employees to certain funds. *Id.* at ¶9.

Avenue made contributions to the Fund on behalf of Cooney. *Id.* at ¶11. The terms of the Fund, however, are not clear, because they are not described in any detail and the plan itself is not attached to the Complaint. The Fund is merely described as a "multi-employer benefit plan" within the meanings set out in 29 U.S.C. §1002(3) and §37(A). *Id.* at ¶2. The amount paid to the funds on Plaintiff's behalf totaled $66,921.60. *Id.*

On December 10, 2008, the Fund – through Hugh Arnold and his firm – sent a letter to Plaintiff declaring that he was "never able to be a member of Local 174 and was not eligible to be a participant in the Fund." *Id.* at ¶13. After December 10, 2008, Cooney made several demands for the return of the money paid by Avenue

---

[2] The Background section is based upon the well-pleaded factual allegations of the Complaint [1] and the related documents properly before this Court. The facts are accepted as true solely for the purpose of this motion.

2

to the Fund on his behalf. *Id.* at ¶16. The Fund and the Trustees have refused to pay. *Id.*

On March 7, 2012, the Trustees, as trustees for a different fund (H&W Fund) commenced an adversary complaint against Plaintiff in the Bankruptcy Court. *Id.* at ¶14. There, the Trustees claimed that Cooney was never a member of Local 174 and therefore was not eligible to participate in the Fund or the H&W Fund. *Id.* at ¶15. The result of that adversary complaint is unclear from the Complaint here.

On December 10, 2013, Plaintiff filed this lawsuit. Count I of the Complaint alleges a state law claim of conversion against the Fund and the Trustees. *Id.* at ¶¶18-20. According to Plaintiff, the Fund and the Trustees converted the amounts paid by Avenue on behalf of the Plaintiff and commingled those amounts with money contributed on behalf of eligible employees. *Id.* at ¶19. Plaintiff claims that the Fund and Trustees are liable for conversion because they "wrongfully retained the pension contribution wrongfully paid by Avenue on behalf of Cooney." *Id.* at ¶18.

Count II of the Complaint alleges a claim for conspiracy against all Defendants. *Id.* at ¶¶21-23. In that Count, Plaintiff states that Hugh Arnold and his firm "actively conspired with the Fund and the Trustees to declare Cooney as being ineligible to be in the Fund." *Id.* at ¶22. According to Plaintiff, "Arnold and his Firm actively conspired with the Fund and the Trustees to convert the contributions made by Avenue on behalf of Cooney." *Id.* at ¶23. For both Counts,

3

Plaintiff requests judgment in his favor in the amount of $66,921.60, plus interest, costs and any other relief the court deems fair and just.

## II. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), this Court must construe the Complaint [1] in the light most favorable to Plaintiff, accept as true all well-pleaded facts and draw reasonable inferences in his favor. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013); *Long v. Shorebank Development Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). Statements of law, however, need not be accepted as true. *Yeftich*, 722 F.3d at 915. Rule 12(b)(6) limits this Court's consideration to "allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). To survive Defendant's motion under Rule 12(b)(6), the Complaint must "state a claim to relief that is plausible on its face." *Yeftich*, 722 F.3d at 915. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III. Analysis

Defendants moved to dismiss Counts I and II as preempted by ERISA. Defendants argue that the Complaint "relates solely to contributions [Plaintiff] alleges his employer made to the fund on his behalf, as required under the terms of

a collective bargaining agreement." [21] at 4. As such, the state law causes of action are pre-empted by ERISA, 29 U.S.C § 1144(a). The Court agrees.

A. Count I: Conversion

ERISA provides a uniform regulatory regime over employee benefit plans. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). To this end, ERISA includes expansive pre-emption provisions, *see* 29 U.S.C. § 1144, ensuring that the regulation of employee benefits plans is "exclusively a federal concern." *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 523 (1981). That regulation is accomplished through the integrated system of procedures for enforcement set out in ERISA Section 502(a). 29 U.S.C. §1132(a). The Supreme Court has described Section 502(a) as "a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987).

Therefore, "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy [ERISA §502(a)] conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Davila*, 542 U.S. at 209. To determine whether a state law claim is pre-empted, the Supreme Court set out a two-part test in *Davila*: "if an individual,

5

at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B)." *Davila*, 542 U.S. at 210. ERISA § 502(a)(1)(B), in turn, provides: "A civil action may be brought—(1) by a participant or beneficiary—... (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

Determining when a state law claim could have been brought under ERISA § 502(a)(1)(B) is relatively simple: Does the claim require this Court to interpret or apply the terms of the employee welfare benefit plan? *Bowles v. Quantum Chemical Co.*, 266 F.3d 622, 631 (7th Cir. 2001); *Rice v. Panchal*, 65 F.3d 637, 644 (7th Cir. 1995). If so, then the claim could have been brought under Section 502(a)(1)(B) and is pre-empted by ERISA. Courts in this Circuit routinely find that state law claims for conversion that are related to ERISA benefit plans are pre-empted. *See, e.g., Midland Logistics, Inc. v. Chicago Truck Drivers*, No. 07 C 5780, 2008 WL 4542979, at *1 (N.D. Ill. Apr. 4, 2008); *Benjamin v. Marshal P. Morris, Ltd. Profit Sharing Plan & Trust*, No. 97 C 6714, 1998 WL 299434, at *1 (N.D. Ill. May 20, 1998); *Delange v. Uptown Painting & Decorating, Inc.*, No.11-C-181, 2013 WL 5639856, at *1 (N.D. Ind. Oct. 15, 2013).

Applying the *Davila* test here, the Court concludes that Plaintiff's claim for conversion is pre-empted by ERISA. The gravamen of Plaintiff's Complaint is that

6

the "Fund and Trustees have wrongfully retained the pension contribution wrongfully paid by Avenue on behalf of Cooney," [1] at ¶18, and that Arnold and his firm allegedly conspired with the Fund and Trustees to make this conversion happen. *Id.* at ¶23.[3] As such, the claim is centered on the following facts: (1) Plaintiff was an employee of Avenue; (2) Avenue made contributions to the Fund on Plaintiff's behalf for a pension plan, pursuant to the CBA and under the terms governing the Fund; (3) those contributions were improper because Plaintiff was not eligible to participate in the Fund; (4) once the Fund and Trustees realized that Plaintiff was not eligible to participate, they informed the Plaintiff; (5) Plaintiff requested the money paid toward his pension plan; and (6) the Fund and Trustees refused. *Id.* at ¶¶7-17.

The issue, then, as Plaintiff sees it, is whether he is entitled to funds that were wrongfully paid to the Fund on his behalf, or in other words, the question for this Court is: when an employer wrongfully makes contributions to an ERISA covered fund, pursuant to the terms of a collective bargaining agreement and the terms of the fund, who is entitled to those funds? As the money at issue was contributed pursuant to the CBA and the terms of the Fund, this issue is most similar to a contract-based claim – *i.e.*, when a party wrongfully pays money under

---

[3] It is important to note, however, that Plaintiff is not suing Avenue for wrongfully making contributions, and he is not suing Avenue or the Defendants for any misrepresentations with regard to the Fund. Such claims might be considered further removed from the Fund at issue, and might survive ERISA preemption. *See Trustees of AFTRA Health Fund v. Biondi*, 303 F.3d 765, 782 (7th Cir. 2002); *Kamler v. H/N Telecomm. Servs., Inc.*, 305 F.3d 672, 679 (7th Cir. 2002).

7

a contract, the resolution of who is entitled to that money is decided with reference to the governing document(s).

Given the above, the Court finds as follows under *Davila*: (1) Plaintiff's conversion claim could have been brought under Section 502(a)(1)(B), and (2) Defendants' actions do not implicate any other legal duty. With regard to the first finding, the question here is whether Plaintiff's claim for conversion requires the interpretation or application of the terms of the employee benefit plan. *Bowles v. Quantum Chemical Co.*, 266 F.3d 622, 631 (7th Cir. 2001). To state a claim for conversion under Illinois state law, the Plaintiff must allege: "(1) an unauthorized and wrongful assumption of control, dominion, or ownership by a person over the personalty of another; (2) his right to the property; (3) his right to immediate, absolute and unconditional possession of the property; and (4) a demand for possession of the instrument." *Heartland Bank & Trust v. The Leiter Grp.*, 18 N.E.3d 558, 563, appeal denied sub nom., 23 N.E.3d 1201 (Ill. 2015).

Here, any decision regarding the first three elements of the conversion test would require analysis and interpretation of the terms of the CBA and the Fund. Whether the Defendants wrongfully assumed control of the money at issue (and Plaintiff's alleged right to that money) depends on the provisions of the plan regarding employer contributions, employee eligibility for participation, the control of the money deposited by employers, and the return of money paid on behalf of ineligible employees. While Plaintiff couches his claim in terms of civil conversion, it could have been brought under Section 502(a)(1)(B) as an action "to recover

benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

At to the second *Davila* factor, no independent duty has been implicated by Defendants' actions. Plaintiff has not been able to point to an independent duty in his briefing, and the Court similarly has found none. Any duty to return or keep the money at issue is governed by the terms of the CBA and the Fund.

In light of the above, Count I is pre-empted.

**B. Conspiracy**

With regard to Plaintiff's claim for conspiracy, the analysis is straight forward. In *Teamsters Local Union No. 705 v. Burlington North Santa Fe, LLC*, the Seventh Circuit specifically found that a state law claim for conspiracy in relation to funds paid to an ERISA-covered health and pension plan was pre-empted by ERISA. 741 F.3d 819 (7th Cir. 2014), cert. denied sub nom., 135 S. Ct. 58 (2014). There, the Court found that there was no conspiracy claim under ERISA, and explained that "where ERISA omits a cause of action for conspiracy to interfere with employee benefits, Illinois law cannot fill the void." *Id.* at 825. Here, Plaintiff has alleged that Arnold and his firm conspired with the Fund and the Trustees to withhold payments to the Plaintiff that were due under the terms of the Fund (either as benefits, or as pay back to a ineligible employee on whose behalf improper payments had been made). Essentially, Plaintiff is seeking to attach a state law conspiracy claim to a conversion claim that this Court has already found could have

been brought under Section 502(a)(1)(B). As such, the instant matter falls squarely within the holding of *Teamsters*, and the Count II claim for conspiracy is preempted.

### C. Plaintiff's Status as a "Participant"

One additional argument by Plaintiff merits discussion here. Plaintiff claims that the application of ERISA preemption is limited to "causes of action brought by participants and their beneficiaries." [30-1] at 3. According to Plaintiff, he was neither a participant nor beneficiary, and therefore his claims are not preempted. This argument is unavailing because Plaintiff is a participant under ERISA.

ERISA defines a "participant" as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer." 29 U.S.C. § 1002(7). The Supreme Court has held that the "may become" language means that the former employee has "a colorable claim to vested benefits," *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117 (1989), and a colorable claim is merely one that is not frivolous. *S. Illinois Carpenters Welfare Fund v. Carpenters Welfare Fund of Illinois*, 326 F.3d 919, 923 (7th Cir. 2003). Because the terms of the Fund are not attached to the Complaint, the Court cannot make an independent determination as to whether the money paid to the Fund on Plaintiff's behalf has "vested." Plaintiff alleges in his Complaint, however, that he has a "right" to the money paid to the Fund. [1] at ¶17. As this stage, the Court is required to accept Plaintiff's pleading as true. On the face of the Complaint, then, Plaintiff has a non-

frivolous claim to the money his employer paid into the fund on his behalf. This is sufficient to show that he is a "participant" under the law at this stage of the proceedings.

## IV. The Trustees

The current status of the fund trustees is unclear from the material before the Court. The Trustees are all named as Defendants in the Complaint [1] and were issued summons as such. *See* Docket Entry at 12/18/13. However, counsel for the Fund only appeared on behalf of the Fund, [5] [8], and the Fund's motion to dismiss does not list the Trustees as moving parties. [20]. Additionally, neither of the joint status reports filed in this matter list any representation for the Trustees. [17] [51]. Thus, the status of the Trustees in this matter is currently unclear. The parties shall come to the next status hearing prepared to discuss this issue, and the Court will issue any necessary additional orders regarding the Trustees after that hearing.

## V. Conclusion

In light of the foregoing, Defendants' motions to dismiss, [20] [23], are granted without prejudice. Although all the substantive counts in the Complaint have been dismissed, Plaintiff needs only plead facts and not legal theories. As explained in *McDonald v. Household Int'l, Inc.*, 425 F.3d 424, 427-28 (7th Cir. 2005), Plaintiffs thus can pursue an ERISA theory of liability without amending their complaint, but in light of this Order, the Court will give Plaintiffs leave to amend their Complaint, if they can do so consistent with their obligations under

11

Rule 11.  The Court will set a deadline for any such amended complaint at the next status hearing, which shall be set by an accompanying minute order.

IT IS SO ORDERED

Dated:  September 24, 2015

_____
Judge John Robert Blakey
United States District Court