# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOHN P. COONEY, | |
| Plaintiff, | Case No. 13-cv-8819 |
| v. | Judge John Robert Blakey |
| TRUSTEES OF THE WILL COUNTY CARPENTERS, LOCAL 174, PENSION FUND, *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

This matter concerns payments made on behalf of Plaintiff John P. Cooney ("Plaintiff") to Defendant Trustees of Will County Carpenters, Local 174, Pension Fund (the "Fund"). In his Second Amended Complaint [78], Plaintiff alleges that the Fund and its Trustees[1] impermissibly converted these payments in violation of Illinois state law. Plaintiff further alleges that the Fund, its Trustees, and its Lawyers[2] "conspired with each other to have the Fund retain and convert the contributions made" on his behalf. *Id.* ¶ 38. The Fund and the Trustees collectively moved to dismiss [80], while the Lawyers filed a separate (albeit similar) motion. [83] at 2-7. For the reasons explained below, Defendants' motions to dismiss are granted.

---

[1] The Trustees are Gary Perinar, Jr., Larry Perinar, Jr., Mel Gary, Jr., James Pasch, and Richart J. Berti. They were each sued in their individual capacities, and throughout this Opinion are referred to collectively as the "Trustees."

[2] The Lawyers are Hugh Arnold and his law firm Arnold & Kadjan. They were both named as defendants, and throughout this Opinion are referred to as the "Lawyers."

I.      **Background**[3]

From January 6, 2004 to October 31, 2008 ("the Relevant Period"), Plaintiff served as in-house legal counsel for Avenue Inc. and Avenue Premier Carpentry and Siding Contractors, Inc. (collectively, "Avenue"). [78] ¶¶ 7, 17. Avenue was a signatory employer with the Chicago Regional Council of Carpenters ("Regional Council") through a Collective Bargaining Agreement ("CBA") between the Regional Council and the Residential Construction Employers Council. *Id.* ¶ 8. Under the CBA, Avenue was obligated to make monthly payments on behalf of its employees within the bargaining unit to the Fund. *Id.* ¶ 9. During the Relevant Period, Avenue did in fact make benefit payments on Cooney's behalf worth $66,921.60 (the "Disputed Monies"). *Id.* ¶ 15.

On December 10, 2008, the Fund—through its Lawyers—sent a letter to Plaintiff declaring that the contributions made on his behalf "did not involve bargaining unit work," such that Plaintiff and his dependents were "ineligible for benefits," including but not limited to receipt of the Disputed Monies. *Id.* Ex. 1. On February 11, 2009, the Lawyers sent additional correspondence to Plaintiff, explaining: "You are neither performing bargaining unit work nor are you covered under the collective bargaining agreement. You are not now, nor never have been, eligible to participate in the Will County Carpenters Local 174 Pension Plan or Welfare Plan." *Id.* Ex. 2. Plaintiff made several demands contesting Defendants'

---

[3] This section is based upon Plaintiff's Second Amended Complaint [78], the exhibits appended thereto, and the Court's previous rulings, [53] and [77].

determination and requesting tender of the Disputed Monies. *Id.* ¶ 23. When those efforts failed, he filed this lawsuit. *Id.*

In his initial Complaint, Plaintiff brought claims for conversion and conspiracy under Illinois state law. [1] at 4-5. This Court dismissed that Complaint without prejudice, finding that because Plaintiff's claims "would require analysis and interpretation of the terms of the CBA and the Fund," both claims were "completely" preempted by 29 U.S.C. § 1132 ("ERISA § 502").[4] [53] at *8. At that time, Plaintiff did not provide the Court with the terms of the Fund itself, so the Court accepted as true Plaintiff's allegation that he was a participant in the Fund.

Plaintiff then filed his First Amended Complaint, wherein he reiterated his state law theories and brought new claims for conversion under 28 U.S.C. § 1103(c)(2)(A)(ii) and breach of fiduciary duty under 29 U.S.C. § 1109. [57] at 6-10. At that point, the Court was able to reference the terms of the Fund, and pursuant to that same language, the Court found that Plaintiff did not qualify as a "participant" under 29 U.S.C. § 102(7). [77] at 6. The Court dismissed Plaintiff's federal claims in light of that determination. *Id.* at 6-7. The Court further ruled that because Plaintiff was not a "participant," his state law claims were not in fact "completely" preempted under ERISA § 502. *Id.* at 7. However, the Court reserved judgment as to whether Plaintiff's state law claims for conversion and conspiracy were still subject to dismissal pursuant to the "conflict preemption" language of 29 U.S.C. § 1144 ("ERISA § 514").

---

[4] "ERISA" stands for the Employment Retirement Income Security Act of 1974.

In response to the Court's ruling, Plaintiff filed his Second Amended Complaint [78], which only contains his claims for conspiracy and conversion. Defendants' motions to dismiss [80, 83] that Second Amended Complaint are now fully briefed and ripe for adjudication.

## II. Legal Standard

To survive Defendants' motions under Federal Rule of Civil Procedure 12(b)(6), the Complaint must "state a claim to relief that is plausible on its face." *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013). A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This Court must construe the Complaint in the light most favorable to Plaintiff, accept as true all well-pleaded facts, and draw all reasonable inferences in his favor. *Id.*; *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). Statements of law, however, need not be accepted as true. *Yeftich*, 722 F.3d at 915. Rule 12(b)(6) limits this Court's consideration to "allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

## III. Analysis

Plaintiff's only pending claims are for conversion (against the Fund and the Trustees) and conspiracy (against the Fund, the Trustees, and the Lawyers). [78] at 7-8. Plaintiff's conversion claim is explicitly brought pursuant to "Illinois common

4

law"; it is unclear whether Plaintiff is attempting to ground his conspiracy claim in state or federal law. *Id.* In either event, both claims are dismissed with prejudice, as more fully explained below.

### A. Conflict Preemption Under ERISA

ERISA § 514 preempts state law claims "insofar as they . . . *relate to* any employee benefit plan." 29 U.S.C. § 1144 (emphasis added). Courts ascribe a common-sense meaning to this provision, such that a state law claim "relates to a benefit plan . . . if it has a connection with or reference to such a plan." *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739 (1985) (internal quotation omitted); *see also Rice v. Panchal*, 65 F.3d 637, 645 (7th Cir. 1995) (ERISA § 514 preempts "state law claims . . . that purport to determine the substantive rights and duties among parties to [the plan's] creation and administration").

As a doctrinal matter, a state law claim is preempted by ERISA § 514 if it would: (1) "mandate employee benefit structures or their administration"; (2) "bind plan administrators to particular choices or preclude uniform administrative practice"; or (3) constitute "an alternative enforcement mechanism to ERISA." *See Trustees of AFTRA Health Fund v. Biondi*, 303 F.3d 765, 775 (7th Cir. 2002). A "common law cause of action . . . will fall into one of these categories when [it is] premised on the existence of an ERISA plan or reliant for its very operation on a direct and unequivocal nexus with the ERISA plan." *Laborers' Pension Fund v. Green Demolition Contractors, Inc.*, No. 15-cv-5633, 2016 WL 74682, at *4 (N.D. Ill. Jan. 7, 2016) (internal quotation omitted).

5

1. **Conversion**

In Illinois, "the elements of a conversion claim are: (1) defendants' unauthorized and wrongful assumption of control, dominion, or ownership of the plaintiff's personal property; (2) plaintiff's right in the property; (3) plaintiff's right to the immediate possession of the property, absolutely and unconditionally; and (4) a demand for possession of the property." *Swift v. DeliverCareRx, Inc.*, No. 14-cv-3974, 2015 WL 3897046, at *7 (N.D. Ill. June 23, 2015) (internal quotation omitted). Plaintiff, in support of his conversion claim, alleges that he possesses superior "rights," "title," and "interest" in the Disputed Monies. [78] ¶ 26. He further claims that the Fund and the Trustees wrongly "commingled" the Disputed Monies "with other ERISA pension Funds," such it would be improper "to permit the Defendants to retain any interest or other income as a result of the contribution to the Funds by Avenue." *Id.* ¶ 34.

a) **Plaintiff's Conversion Claim Implicates Plan Administration**

Plaintiff's state law conversion claim represents an attempt to "mandate employee benefit structures" and "preclude uniform administrative practice," *Biondi*, 303 F.3d at 778, such that it is preempted by ERISA § 514. Plaintiff's conversion claim is also "premised on the existence of an ERISA plan." *Green Demolition Contractors, Inc.*, 2016 WL 74682, at *4. Indeed, Plaintiff's principal factual allegations in support of this claim are: (1) he had "superior rights" to the Disputed Monies; and (2) Defendants impermissibly commingled the Disputed Monies with "other ERISA pension Funds." *See supra* at *5-*6. In order to

6

determine which party maintains "superior rights" to the Disputed Monies or whether Defendants' commingling of the Disputed Monies was improper, the Court would necessarily look to the operative plan agreements. When a state law claim evidences "such a direct and unequivocal nexus with the ERISA plan," it is preempted. *Green Demolition Contractors, Inc.*, 2016 WL 74682, at *4. Moreover, any finding in Plaintiff's favor would alter "employee benefit structures" and "administrative practice," insofar as the Fund and Trustees would be required to parse (and potentially return) already-pooled monies.

### b) Plaintiff's Conversion Claim Amounts To An Alternative Enforcement Mechanism

The Court further finds that Plaintiff's state law conversion claim represents an attempt to impose an "alternative enforcement mechanism to ERISA," *Biondi*, 303 F.3d at 778, and is accordingly preempted by ERISA § 514. Indeed, Plaintiff's conversion claim is redundant of multiple ERISA enforcement procedures.

As a preliminary matter, ERISA § 502 provides that a "civil action may be brought by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Moreover, both parties acknowledge that putative plaintiffs may, in limited circumstances, pursue a *federal* common law cause of action for restitution, consistent with ERISA. *See UIU Severance Pay Trust Fund v. Local Union No. 18-U, United Steelworkers of Am.*, 998 F.2d 509, 512 (7th Cir. 1993) ("[W]e believe that recovery of contributions mistakenly made can be attempted under a federal common-law theory of

7

restitution.") (internal quotation omitted); *see also Constr. Indus. Ret. Fund of Rockford, Ill. v. Kasper Trucking, Inc.*, 10 F.3d 465, 467 (7th Cir. 1993) ("ERISA lets courts establish a federal common law governing restitution of mistaken payments.").

Plaintiff argues that, under *Kasper*, "the Seventh Circuit permits non-participant employees to recover funds mistakenly paid by their employer into an ERISA pension fund." [90] at 7. On the contrary, *Kasper* recognized a limited *federal* common law *restitution* theory available to putative plaintiffs when disputed pension contributions are: (1) an agreed form of compensation; and (2) placed into defined (i.e., individual) accounts. *Kasper*, 10 F.3d at 468. Plaintiff's claim here is for *conversion* pursuant to *state* law, there is no suggestion that the Disputed Monies were a portion of his compensation, and he acknowledges that the Disputed Monies have already been pooled; accordingly, Plaintiff's reliance on *Kasper* is misplaced.

In fact, *Kasper*'s federal common law restitution theory has been invoked in this district as a basis for finding preemption of state law claims for restitution and conversion:

> Here, plaintiff asserts claims for conversion, constructive fraud and unjust enrichment, all based on the theory that the defendants should not be allowed to keep the welfare plan contributions if they are not going to provide the corresponding welfare benefits. As such, plaintiff's claims are essentially either (1) claims for denial of benefits under § 502(a)(1)(B) of ERISA or (2) claims for refund of improperly paid ERISA plan contributions. *See* 29 U.S.C. § 1132(a)(1)(B); *UIU Severance Pay Trust Fund v. Local Union No. 18-U,* 998 F.2d 509, 512-513 (7th Cir. 1993)

8

> (authorizing cause of action under ERISA for return of mistakenly-paid ERISA plan contributions). As such, they duplicate or supplement claims under ERISA and are preempted.

*Midland Logistics, Inc. v. Chicago Truck Drivers*, No. 07-cv-780, 2008 WL 4542979, at *2 (N.D. Ill. Apr. 4, 2008); *see also Adkins v. Local 705 Int'l Bhd. of Teamsters Pension Fund*, 787 F. Supp. 2d 812, 817 (N.D. Ill. 2011) ("[Plaintiff] attempts to extend that restitution theory [from *UIU Severance* and *Kasper*] to employees who demand payment from pension plans when employers have made mistaken contributions based on their compensation. But Fund correctly points out that such a quantum leap has been rejected by virtually every court that has previously considered any such theory.").

Courts in other jurisdictions have also rejected attempts to invoke state law conversion theories in the pension fund arena. *See LoPresti v. Terwilliger*, 126 F.3d 34, 41 (2d Cir. 1997) (common law conversion claim to recover losses to pertinent funds was "nothing more than an alternative theory of recovery for conduct actionable under ERISA" and "undoubtedly" preempted) (internal quotation omitted); *Mank v. Green*, 350 F. Supp. 2d 154, 158 (D. Me. 2004) ("It is obvious from Plaintiff's Complaint that her state law claims for unjust enrichment . . . and conversion are an attempt to utilize state law as an alternative enforcement mechanism.").

In short, Plaintiff's conversion claim implicates extensive review of the operative plan documents, his potential victory would have far-reaching consequences for plan administration, and his state law conversion theory is

9

redundant of existing federal doctrine. Consequently, Plaintiff's state law conversion claim is barred by the "aggressive form of preemption" embodied in ERISA § 514. *Sharp Electron. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 514 (7th Cir. 2009).

### 2. Conspiracy

Controlling precedent dictates that Plaintiff's conspiracy claim must also fail. *See Teamsters Local Union No. 705 V. Burlington N. Santa Fe LLC*, 741 F.3d 819 (7th Cir. 2014). In *Teamsters*, several union members alleged that the defendant railroad had conspired with a rival union to interfere with their benefits in violation of ERISA. *Id.* at 821. The Seventh Circuit first explained that there is no actual or implied federal cause of action for conspiracy within ERISA. *Id.* at 824 ("Time and again the [Supreme] Court has cautioned that ERISA offers little room for implied causes of action or remedies, recognizing that the statute's enforcement scheme was the product of detailed study . . . Accordingly, there is no basis for recognizing an implied cause of action for conspiracy[.]"). The court then noted that state law conspiracy claims are similarly unavailable in the ERISA context: "Moreover, where ERISA omits a cause of action for conspiracy to interfere with employee benefits, Illinois law cannot fill the void . . . if the plaintiffs' conspiracy claim is premised on state law, it is preempted." *Id.* at 825-26.

*Teamsters* controls in this case. The Seventh Circuit has both rejected the prospect of implied federal common law conspiracy claims in the ERISA context and held that state law conspiracy claims concerning pension fund administration are

preempted by ERISA. Accordingly, whether Plaintiff's conspiracy claim is premised on state or federal law, it is dismissed.

## IV. Conclusion

Plaintiff's state law conversion claim is preempted by ERISA § 514, and his conspiracy claim is untenable in light of *Teamsters*. Accordingly, Defendants' Motions to Dismiss, [80] and [83], are granted, and Plaintiff's claims are dismissed with prejudice. Civil case terminated.

Date: November 21, 2016

ENTERED:

John Robert Blakey
United States District Judge